553 So.2d 827 (1989)
Lillian Callais BOYER
v.
Lanette SEAL and America First Insurance Company.
No. 89-C-0093.
Supreme Court of Louisiana.
December 11, 1989.
Rehearing Denied January 18, 1990.
Anthony L. Glorioso, for applicant.
Thomas E. Loehn, Robert I. Baudouin, Boggs, Loehn & Rodrigue, for respondent.
DENNIS, Justice.[*]
The issue in this case is whether a plaintiff, who has been injured by a domestic animal, must prove, in order to recover damages from the animal's owner under Louisiana Civil Code article 2321, that the injury occurred through an unreasonable risk of harm created by the animal. The elderly plaintiff tripped and fell at her daughter's house when her daughter's cat got underfoot. As a result of her injuries, plaintiff filed suit against her daughter and *828 her daughter's insurer. A jury awarded plaintiff damages after having been instructed that the plaintiff need prove only that the cat caused the accident and that the animal was owned by her daughter. The Court of Appeal reversed because the plaintiff failed to prove that the cat committed an aggressive act or "in and of itself constitute[d] an unreasonable risk of harm." Boyer v. Seal, 534 So.2d 30, 32 (La.App. 4th Cir.1988). We affirm. In order to recover under Civil Code article 2321, the plaintiff is required to prove that the domestic animal causing her damage was owned by the defendant, that the animal created an unreasonable risk of harm, and that her damage occurred through this risk. It was not necessary for the plaintiff to establish that the animal was inherently dangerous or that it committed an aggressive act. Nevertheless, the Court of Appeal's decision was essentially correct because the risk created by the cat in getting underfoot and accidentally tripping the plaintiff was not an unreasonable risk.

Facts
On December 10, 1985, plaintiff, Lillian Boyer, and her husband went to the home of her daughter, Lanette Seal, for a visit. Plaintiff and her daughter were in the process of making crafts for the upcoming holiday season. Around lunchtime, plaintiff went into the kitchen to wash her hands. As she was beginning to move away from the sink, her daughter's cat, Magique, either rubbed up against or walked or ran between her legs causing her to lose her balance and fall. Plaintiff did not go to the hospital immediately after the fall, but her wrist became swollen and she concluded that medical attention was necessary. The plaintiff then learned that the fall had not only caused injuries to her wrist, but that she had also injured her back. Both of the injuries required medication and hospitalization. She is now hampered by the injuries because she cannot do handwork, go bowling, or do household chores. She also needs help getting in and out of the bathtub.
As a result of the injuries, plaintiff sued her daughter and her daughter's homeowners insurer, America First Insurance Company. Plaintiff's petition contained allegations that her daughter should be strictly liable for the injuries caused by her cat and that, in the alternative, her daughter's negligence was the "sole and proximate cause" of the accident. After a trial on the merits, the jury found that the defendants were liable for the plaintiff's injuries both because of Lanette Seal's negligence and because of her strict liability as owner of the animal that caused the harm. The jury assessed plaintiff's damages at $100,000.00, but found that her negligence contributed 23% of the legally pertinent factors causing the accident. The trial court consequently awarded her $77,000.00 in damages.
Defendants filed a suspensive appeal and plaintiff answered, urging that the degree of fault assigned to her be reversed. The Fourth Circuit Court of Appeal found that an instruction given to the jury based on article 2321 was erroneous and tainted the verdict. Therefore, the appellate court gave no deference to the findings of the trial court and reviewed the case de novo. Upon such review, the court concluded that the trial court erred in finding liability and reversed. The Court of Appeal addressed the strict liability issue, finding that plaintiff had failed to establish the necessary requirments thereunder. However, the court did not make a finding with respect to the negligence claim. This court granted certiorari to consider whether a person whose injury has been caused by a domestic animal must prove anything further in order to recover, and, in particular, whether she must prove that her damage resulted from an unreasonable risk of harm created by the animal. 538 So.2d 600 (La. 1989).

Historical Basis for Liability Under Article 2321
This is a case in which "a page of history is worth a volume of logic." Holmes, J. in N. Y. Trust Co. v. Eisner, 256 U.S. 345, 349, 41 S.Ct. 506, 507, 65 L.Ed. 963 (1921). See B. Cardozo, The Nature of the Judicial Process 55 (1921). Article 2321 of the Civil Code, in pertinent part, provides *829 only that "[t]he owner of an animal is answerable for the damage he has caused...." To interpret the article literally and in isolation from the related code articles, however, would be to impose absolute liability, a consequence this court emphatically has reserved for instances in which damage is done by wild animals. Holland v. Buckley, 305 So.2d 113, 119 n. 4 (La. 1974); Briley v. Mitchell, 238 La. 551, 115 So.2d 851 (1959); Vredenburg v. Behan, 33 La.Ann. 627 (1881). See also Granger v. United States Fidelity & Guaranty Co., 266 So.2d 526 (La.App. 3d Cir.1972); Rolen v. Maryland Casualty Co., 240 So.2d 42 (La.App. 2d Cir.1970), writ denied, 256 La. 1149, 241 So.2d 252 (1972); Marsh v. Snyder, 113 So.2d 5 (Orl. App.1959). On the other hand, to assert without authoritative jurisprudential or doctrinal basis that the article requires proof of an aggressive act or inherent danger would initiate an anomalous case law development similar to that overruled by the court in Holland v. Buckley. 305 So.2d at 120. Alternatively, to assume, without examining the chronological record, that proof of the creation of an unreasonable risk by the animal involved is required under the article would be to yield to predilection and possibly overlook a historical basis for a distinction between article 2321 and other related code provisions.

French Jurisprudential Development
The original delictual responsibility provisions of the French Civil Code of 1804 are virtually identical to the corresponding articles of the Louisiana Civil Code that are based primarily upon them. The lead article proclaims the fault principle: Every person must repair the damage done to another by his fault. Code Civil article 1382. The next article defines fault to include not only intentional acts but also negligence. C.Civ. art. 1383. The remaining articles impose liability based on the defendant's relationship to some other person or thing. The first relational liability provision, which may have been intended only as an introductory statement, provides generally that every person is responsible, not only for the damage occasioned by his own act, but also for damage caused by the act of persons for whom he is answerable and the act of things in his custody. C.Civ. art. 1384. The following provisions define specific situations in which a person is liable for injuries caused by another, i.e., by one's child, employee or pupil, C.Civ. art. 1384, by one's animals, C.Civ. art. 1385, and by the collapse of one's buildings. C.Civ. art. 1386. These texts thus adopted a dual approach: Liability was either fault-based or based on the defendant's relationship with the injury causing person or thing. See E. Tomlinson, Tort Liability In France For the Act of Things: A Study of Judicial Lawmaking, 48 La.L.Rev. 1299, 1300 (1988).
During the nineteenth century article 1385 generated many law suits because work animals were a major cause of personal injuries. Tomlinson, supra at 1314. The Court of Cassation, in Montagnier v. Leydon, Cass. civ., 27 Oct. 1885, 1886 D.P. Jur. I 207, 1886 S.Jur. I 33, interpreted article 1385 to establish a presumption of fault imputable to the owner or guardian of an animal which has caused injury and to provide that the presumption only yields before proof of an unforeseeable event [cas fortuit] or of a fault committed by the injured party. In that case the injury caused the plaintiff Montagnier arose from the fall of stones which a mule, belonging to Leydon and kept under his garde, had knocked from the top of a wall as to strike Montagnier. (An English translation of the Montagnier case can be found in Tomlinson, supra at 1365, Appendix 3). The Court of Cassation repeated this interpretation of article 1385 until it became fixed and beyond challenge. Tomlinson, supra at 1320. See also 2 M. Planiol, Treatise on the Civil Law, part 1, Nos. 918-920 (LSLI translation 1959); 2 H. Mazeaud, L. Mazeaud and J. Mazeaud, Traite theorique et pratique de la responsabilite civile 1133 at 188 n. 6 (6th ed. 1970); Holland, 305 So.2d at 118. Evidently, the court was influenced by the argument that the Code, like the pre-Code law, contained a special provision on animals because the legislature believed owners and users were at *830 least presumptively at fault for injuries inflicted by their animals and that the inclusion of article 1385 in the Code made no sense unless the legislature intended to establish some special rule more favorable to the injured party than the otherwise applicable general rule of articles 1382 and 1383, which required the accident victim to prove the owner's fault. Tomlinson, supra at 1316-1317.
Article 1386, on the other hand, had a very limited scope but imposed a stricter form of liability. It provided a right of recovery to persons damaged by the ruin or collapse of buildings against its owner when caused by lack of maintenance or vice of construction. If the plaintiff proved that his damage resulted from one of these two causes, the owner was necessarily liable regardless of his ignorance of the bad condition or his inability to prevent the ruin. Planiol, supra at No. 924. See also F. Stone, Louisiana Civil Law Treatise, Torts § 358 at 461 n. 14. It does not appear, however that liability in France under article 1386 was absolute, as sometime in the jurisprudential or doctrinal development thereunder, the owner was allowed to defend himself by proving that the damage was attributable to either an irresistable force, or a cause not imputable to him. Stone, supra § 350 at 454 n. 69, 72. Cf. Loescher v. Parr, 324 So.2d 441 (La. 1976); Olsen v. Shell Oil Co., 365 So.2d 1285 (La.1979).
The broad general statement at the beginning of French Civil Code article 1384, stating that each person is responsible for the acts of things in his garde, was ignored for nearly a century after the adoption of the Code in 1804. See Planiol, supra at No. 917; D. Verlander, We Are Responsible...., 2 Tulane Civil Law Forum, No. 2, p. 31 (1974). After the turn of the century, work animals, a major cause of personal injuries during the 1800's, gradually disappeared from factories and city streets, and article 1385, therefore, received fewer and fewer applications. Tomlinson, supra at 1322. On the other hand, the need to find a new basis for compensating workers injured by industrial accidents had become acute. Factory owners and other employers who profited from the labor of their employees, but refused to compensate them for on-the-job injuries that inevitably resulted, were too often shielded from liability by the difficulty of proving that the employees' machine-related accidents had been caused by the employers' fault as interpreted under articles 1382 and 1383.
In 1896, the Court of Cassation discovered in article 1384 a basis for holding employers liable for workplace injuries to employees caused by defective machinery even in the absence of the employer's fault. Guissez, Cousin et Oriolle v. Teffaine, 16 June 1896, 1897 D.Jur. I 433 (note Saleilles), 1897 S.Jur. 117 (note Esmien). (For an English translation of the noted case, see, A. von Mehren & J. Gordley, The Civil Law System, An Introduction to the Comparative Study of Law, 608 (1977)). In the Teffaine case a boiler aboard a tugboat had exploded killing a mechanic named Teffaine employed by the boat's owner. An official investigation established that a defect attributable to the manufacturer had caused the explosion. Teffaine's widow sued the boat owner, who in turn sued the manufacturer in warranty. The court of appeal, by analogy to article 1386 under which the owner of a collapsing building could be held strictly liable for resulting injuries, held that the owners of the exploding boiler were responsible. Further, the court decreed that the manufacturer was contractually obliged to indemnify the owners for their loss. The Court of Cassation affirmed, but on a different, and new, legal basis: Article 1384's provision that a person is responsible for the act of things under his garde. According to the high court, the fact that a defect in construction caused the explosion excluded any possibility of "cas fortuit" or "force majeure", making the owners, who were also guardians of the boiler, liable for Teffaine's death. Moreover, the court held that the owners could not avoid liability by proving the manufacturer's fault or the hidden nature of the defect.
In 1898, however the practical importance of Teffaine was reduced when France adopted its first worker's compensation *831 law, requiring employers to compensate employees for work-related injuries and barring industrial accident suits based on articles 1382-1386 of the Civil Code. See Planiol, supra at No. 931(1); Verlander, supra at 35. In the early 1900's the Court of Cassation and other French courts retreated from the Teffaine interpretation and, in effect, construed article 1384 to merely shift the burden of proof of absence of fault to the defendant, thus allowing him to avoid liability by showing that he had exercised due care. Tomlinson, supra at 1331. See also F.H. Lawson, Negligence in the Civil Law 46 (1962). The courts also tended to limit article 1384 by applying it only to things that had within themselves some inherent quality that unleashed a destructive force, (e.g. exploding boilers) and not to things that caused injuries while being operated by the hand of man (like automobiles). Tomlinson, supra at 1331.
By the 1920's, however, the growing numbers of motor vehicle accidents caused the bench and bar to look for a new basis upon which to compensate tort victims. The special code provisions which covered the most common causes of personal injury in 1804, i.e., animals and collapsing buildings, by plainly favoring plaintiffs injured in such accidents, had become obsolete with the coming of age of the automobile. In Jand'heur v. Les Galeries Belfortaises, Cass, civ., 13 February 1930, 1930 D.Jur. I 57 (note Ripert), 1930 S.Jur. I 121 (note Esmein), finally decided in 1930, the Court of Cassation announced its fully developed interpretation of article 1384 providing for the essential ingredients of a guardian's liability for injury caused by a thing under his garde. In that case, a delivery truck driven by an employee of a local department store had struck and permanently crippled a young girl. Her widowed mother sued the department store as guardian of the truck and as the employer of its driver. In its final decision, favoring the plaintiff, the Court of Cassation expanded and significantly modified the basis of a guardian's responsibility. First, a "presumption of liability" (rather than just a "presumption of fault") is established by article 1384 against the guardian of an inanimate thing (not just a movable thing) which has caused injury to another. Second, the court deleted any reference to the dangerousness of the thing. Third, the guardian's liability may be rebutted only by proof of an unforeseeable event [cas fortuit] or of an irresistible force [force majeure] or of an external cause not imputable to the guardian; and it does not suffice to prove that he committed no fault or that the cause of the damage remains unknown. Fourth, for the plaintiff to recover, it is not necessary that the thing have an inherent defect susceptible of causing the injury, as article 1384 attaches liability to the garde of the thing, not to the thing itself. (An English translation of the Jand'heur case can be found in Tomlinson, supra at 1367, Appendix 5 and von Mehren & Gordley, supra at 629.) Consequently, the Jand'heur decision extended to a much larger class of accident victims, viz., persons caused harm by inanimate things, the special advantages previously reserved to those injured by an animal or the collapse of a building. Tomlinson, supra at 1352. See also Verlander, supra at 36.
To summarize in rough, the French court decided that the opening statement of article 1384 must be treated as a general principle of law controlling the liability of the guardian of a thing, rather than as a mere introductory provision, because the 1804 Civil Code had failed to anticipate the industrial revolution or the automobile age and therefore its more specific provisions relating to animals and collapsing buildings no longer could serve as precepts to be applied directly in the adjudication of the most common types of personal injury cases in the twentieth century. The provisions relating to liability for animals and collapsing buildings, however, may be regarded as early specific examples of application of the general principle of liability set forth in article 1384. Consequently, the court concluded that the formula of presumptions and defenses developed under the special provisions should be borrowed or applied by analogy in deciding whether a person is liable for the damage caused by a *832 thing in his garde as provided by article 1384.

Louisiana Jurisprudence
In Holland v. Buckley, 305 So.2d 113 (La. 1974) this court recognized that article 1385 of the French Civil Code corresponded to our own article 2321, that the Louisiana article should be afforded the interpretation accorded it by the French authorities, since it was drawn from French sources, and that in the crowded society of today the burden of harms caused by an animal should be borne by its master who keeps him for his own use or pleasure rather than by an innocent victim injured by the animal. Accordingly, this court held that the correct interpretation of Civil Code article 2321 is as follows: "When a domesticated animal harms another, the master of the animal is presumed to be at fault. The fault so provided is in the nature of strict liability, as an exception to or in addition to any ground of recovery on the basis of negligence, Article 2316. The owner may exculpate himself from such presumed fault only by showing that the harm was caused by the fault of the victim, by the fault of a third for whom he is not responsible, or by a fortuitous event." 305 So.2d at 119. Applying this rule in Holland, this court held the owner of a dog liable to the plaintiff whom it had bitten, despite the lack of any evidence of the owner's fault, simply because the owner did not rebut the presumption of fault created by the injury caused by the dog.
A year later, in a case involving a person's liability for the damage caused by his inanimate thing, viz., a tree, this court adopted a variation of the French interpretation of French Civil Code article 1384, holding that under our own Civil Code article 2317 when a plaintiff proves (a) that the thing which caused his damage was in the garde of the defendant, (b) the defect or vice of the thing, i.e., the unreasonable risk of harm created by it, and (c) that his damage occurred through this defect or vice, the guardian of the thing is liable, unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Loescher v. Parr, 324 So.2d 441, 449 (La. 1976). This formula for determining a guardian's responsibility contains a limitation not recognized by the French jurisprudence, i.e., the damage must have been caused by a vice or aspect of the thing that creates an unreasonable risk of harm to others. In explaining the formula, this court described its previous interpretations of Civil Code articles 2318, 2320, 2321 and 2322 as follows: "[I]n Holland v. Buckley, 305 So.2d 113 (La.1974) we held that under Article 2321 the owner of an animal which creates an unreasonable risk of injury to others is liable for the harm done by that animal because of its deficient conduct, even though the owner himself was not personally negligent." 324 So.2d at 446. Further, this court noted that under articles 670 and 2322, the owner of a building is liable to a neighbor or passer-by injured through the fall of his building due either to a vice in its original construction or to his neglect to repair it. In this regard, "[h]is fault is founded upon the breach of his obligation to maintain or repair his building so as to avoid creation of risk of undue injury to others." 324 So.2d at 444. Likewise, this court explained, under article 2320 a master is liable for his servant's unreasonable creation of risk to others, and under article 2318 a parent is liable for damage caused by a child which creates an unreasonable risk of injury to others. 324 So.2d at 446.
Moreover, the Loescher court summarized the principles of legal fault under articles 2318, 2320, 2321 and 2322 as follows: "When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others." 324 So.2d at 446.
*833 Subsequent to Loescher, this court has not allowed recovery for damage by a domestic animal in the absence of proof that the injury resulted from an unreasonable risk of harm created by the animal. In Rozell v. Louisiana Animal Breeders Co-Op., 496 So.2d 275 (La.1986), this court, after finding that the plaintiff's injuries had been caused by the bull's behavior that "constituted an unreasonable hazard of injury," reversed the judgments of the lower courts rejecting recovery and remanded for the awarding of damages. 496 So.2d at 278. In Howard v. Allstate Insurance Co., 520 So.2d 715 (La.1988), a case in which the application of comparative fault was the only hotly contested issue, the fact that a German shepherd's behavior in biting a young girl had created an unreasonable risk of harm that led to her injury was not disputed. In addition, like this court, many courts of appeal have refused to find an animal owner liable under article 2321 unless the damage suffered by the plaintiff was caused by an animal that created an unreasonable risk of harm. See, e.g. Martinez v. Modenbach, 396 So.2d 471 (La.App. 4th Cir.), writ denied, 399 So.2d 620 (La. 1981); Thompson v. Sicard, 385 So.2d 334 (La.App. 1st Cir.) writ denied, 386 So.2d 355 (La. 1980); Daniel v. Cambridge Mutual Fire Insurance Co., 368 So.2d 810 (La.App. 2d Cir.) writ denied, 369 So.2d 1063 (La. 1979); Brooks v. United States Fidelity & Guaranty Co., 358 So.2d 660 (La.App. 1st Cir. 1978).

Lack of Historical Basis for Exempting Animal Cases From Unreasonable Risk Requirement
There does not appear to be any basis in French jurisprudence for treating liability for damage caused by animals as a stricter form of responsibility than that of the guardian for harm caused by an inanimate thing. Article 1385 of the French Civil Code seems to have been derived from the special rules on liability for injuries inflicted by animals in Roman law, in the customs of pre-revolutionary France, and in the writings of French jurists prior to codification. Yet, as we have seen, this form of liability did not remain separately imprisoned in its pre-code state; its evolution was an essential ingredient in the growth and exposition of French delictual law in the industrial and automotive era. A presumption of fault, resembling strict liability, developed in the interpretation of article 1385 that was later incorporated and built upon in the discovery of the presumption of liability theory underlying article 1384.
Likewise, the evolvement of the liability for damage by animals and inanimate things in Louisiana contains no genuine historical basis for treating responsibility under Civil Code article 2321 as more strict or inherently different from that recognized under article 2317. In Loescher, when this court formulated a principle of strict liability for damage caused by inanimate things, it identified as the basic criterion for this new form of responsibility the same common characteristic it found to underlie the other forms of strict liability previously recognized under Civil Code articles 2318, 2320, 2321 and 2322, including the strict liability for damage caused by a domestic animal. The basic criterion and common characteristic recognized was that the thing or the person under garde must have created an unreasonable risk of harm that took effect in causing the plaintiff's injury. In fact, in Loescher this court acknowledged that "in Holland v. Buckley... we held that under Article 2321 the owner of an animal which creates an unreasonable risk of injury to others is liable for the harm done by that animal because of its deficient conduct, even though the owner himself was not personally negligent." Loescher, 324 So.2d at 446.
The court had not actually used the words "unreasonable risk of harm" in Holland v. Buckley when it adopted the French interpretation of the Civil Code's provision for liability due to damage caused by animals, but there was no great need to discuss a possible limitation upon the scope of liability in that case. The attack upon Holland and his poodle by Buckley's German shepherd was clearly among the type of harms that had traditionally been covered under the French code and pre-code law. Further, the application of an open-ended strict liability to the comparatively small *834 field of animal cases did not portend the cataclysmic effects that might result if it were to be applied to cases involving mishaps caused by inanimate things, including all motor vehicle accidents.
When the same court, speaking through the same author, Justice Tate, subsequently in Loescher considered a case involving damage caused by a tree, an object belonging to the infinite class of inanimate things, it perceived that if it were to adopt an interpretation of Civil Code article 2317 similar to that placed by the French courts on article 1384, paragraph 1, of the Code Napoleon, it would be challenged by two major problems: First, whether to limit the scope of the liability for damage caused by inanimate things so as to avoid the main weakness of the French experience, i.e., the confusing, contradictory, and mysterious principles and solutions involved in applying strict liability to all things involved in accidents, especially to all vehicles involved in traffic accidents; and second, once the desirable scope of the new strict liability had been determined, how to reconcile this with the other bases of strict liability previously recognized under the Civil Code. See A. Tunc, Louisiana Tort Law at the Crossroads, 48 Tul.L.Rev. 1111, 1119 (1974). The Loescher court chose, in adopting a strict liability for damage caused by things, to address both problems by limiting that liability to responsibility for damage caused by a thing's vice or defect, which it defined as a quality or aspect of a thing that creates an unreasonable risk of harm to others. After a comprehensive review and analysis of the previous cases recognizing strict liability under other delictual articles of the Civil Code, the court concluded that the basic principle of each of those articles is the same as that which underlies article 2317 strict liability, viz., the liability of the owner or guardian "arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others." Loescher, 324 So.2d at 446.

Retention and Application of the Principle
There is no better reason in principle or policy than in history to expand responsibility for animals into a rule of superstrict liability. This court rendered in Loescher what it plainly considered to be a fundamental judgment using civilian and comparatist methodology to combine diverse conceptions into a coherent principle giving strict liability manageable scope and harmonizing its several categories. The principle is that the guardian of the person or thing should bear the cost of damage caused through unreasonable risks of harm that his charge creates. There are various policies supporting the unreasonable risk principle: As Loescher observes, the person who has the guardianship and usually the enjoyment of the person or thing should bear the cost of damage caused by risks they create rather than the innocent victim. Further, it is thought that the guardian is in a better position to anticipate, detect, guard against, and insure against these risks, making him a better risk spreader and more efficient conductor of the deterrent effects of civil liability. A competing policy, however, is that the guardian should not be responsible for protecting against all risks; some risks are relatively too small to require him to protect others therefrom. Thus, if the unreasonable risk of harm principle were to be abolished in the cases involving liability for animals, these policies would tend to be defeated or at least not promoted and owners would be made insurers against loss from any risk, no matter how insignificant or socially tolerable the risk might be. We see no reason that animal owners should be treated less favorably than owners of buildings and guardians of inanimate things under strict liability conceptions of the Civil Code. Moreover, it would appear that doing so might undermine the principle's application to strict liability under other delictual articles of the Code. Consequently, we conclude that the unreasonable risk of harm principle should be maintained in animal cases in the interest of the continued manageable and harmonious application of strict liability under the Civil Code.
This court has explained that the judicial process involved in deciding whether a thing under garde posed an unreasonable *835 risk of harm is similar to that of taking into account all of the social, moral, economic and other considerations as would a legislator regulating the matter. Entrevia v. Hood, 427 So.2d 1146 (La.1983). See also Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La. 1988); Bell v. Jet Wheel Blast, 462 So.2d 166 (La. 1985); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971); B. Cardozo, The Nature of the Judicial Process 105 (1921); Geny, Method of Interpretation and Sources of Private Positive Law § 174 (LSLI translation 2d ed. 1963). We have also noted that the unreasonable risk of harm concept is virtually identical with the risk-utility balancing test that is part (but not all) of both negligence and strict products liability theories in Anglo-American law. Bell, supra; Entrevia, supra. See also L. Hand, J. in United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir. 1947) and Conway v. O'Brien, 111 F.2d 611, 612 (2d Cir.1940); Restatement (Second) of Torts §§ 291-293, 402A; Harper, James and Gray, The Law of Torts § 16.9 (1986); Prosser and Keeton On Torts § 31 (5th ed. 1984); R. Posner, A Theory of Negligence, 1 J. Legal Stud. 29 (1972). It is interesting and instructive that Justice Tate, the author of this court's opinions in Loescher and Holland, in an opinion he wrote as a judge of the United States Fifth Circuit Court of Appeals, confirmed that the legislative fact consideration and risk-utility balancing tests are valid approaches to determining whether a person or thing under garde posed an unreasonable risk of harm to others. See Matthews v. Ashland Chemical, Inc., 703 F.2d 921 (5th Cir. 1983).
Applying these precepts to the present case, we conclude that the risk created by the defendant's cat, Magique, that resulted in the plaintiff's injuries was not an unreasonable risk of harm. We do not believe that a legislator or other objective policymaker regulating this case, after weighing all social, economic, moral and other considerations, would decide that the behavior of the cat in either rubbing the legs of a visitor in its home or accidentally getting in the way or underfoot is an unreasonable risk of harm. Magique's behavior was innocuous, especially when compared with other cat-created risks widely tolerated by our society. (For an illustration of these other risks in verse, see T.S. Eliot's Old Possum's Book of Practical Cats.) Further, it does not appear that the likelihood of injury resulting from such catlike behavior multiplied by the gravity of the harm threatened by it would outweigh the utility of keeping a cat as a pet in a home where she may be displayed and exposed to visiting relatives and guests. Although a detailed discussion of the content and application of the unreasonable risk concept is not necessary in the present case, as the behavior of this particular cat clearly did not present an unreasonable risk of harm, more thorough analyses and applications can be found in previous cases. E.g., Entrevia, supra; Matthews, supra; Levi v. SLEMCO, 542 So.2d 1081 (La. 1989); Pitre v. Opelousas General Hospital, 530 So.2d 1151 (La.1988); Allien v. Louisiana Power & Light Co., 202 So.2d 704 (La.App. 3d Cir. 1967).
As a result of our construction of article 2321 and the foregoing conclusions with respect to the behavior of this particular animal, the judgment of the Court of Appeal finding that the animal in this case posed no unreasonable risk of harm leading to the plaintiff's injury and reversing the judgment of the trial court is affirmed. In addition, we do not find, from a thorough reading of the record, any evidence that plaintiff's daughter was guilty of any negligence that caused her mother's injuries. Accordingly, we conclude that plaintiff's contentions based upon Civil Code articles 2315 and 2316 are also without merit.
For the reasons assigned the judgment of the Court of Appeal reversing the judgment below and rejecting plaintiff's claims is affirmed.
AFFIRMED.
NOTES
[*] Hall, Chief Judge, Court of Appeal, Second Circuit, Associate Justice Pro Tempore, sitting for Lemmon, Justice, who did not participate in this decision.