611 So.2d 121 (1992)
Marjorie R. LYNCH Wife of/and James J. Lynch, Jr.
v.
HANOVER INSURANCE COMPANY.
No. 92-CA-210.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1992.
On Rehearing December 18, 1992.
Writ Denied March 12, 1993.
Phillip T. Hager, Metairie, for plaintiffs/appellants, Marjorie R. Lynch, Wife of/and James J. Lynch, Jr.
*122 Sidney J. Angelle, Lobman, Carnahan and Batt, Metairie, for defendants/appellees, Barry and Gerilyn Brouphy and Massachusetts Bay Ins. Co.
Before BOWES, DUFRESNE and WICKER, JJ.
BOWES, Judge.
Plaintiffs, Marjorie Lynch wife of/and James Lynch, Jr., appeal from a judgment in favor of defendants, Barry and Gerilyn Brouphy, and their homeowner's insurer, Massachusetts Bay Insurance Company, a subsidiary of Hanover Insurance Company, dismissing plaintiffs' suit against defendants. We affirm.

FACTS
On February 23, 1989, plaintiff, Mrs. Lynch and her daughter, defendant Gerilyn Brouphy, planned to make soup at Mrs. Brouphy's house. Accordingly, Gerilyn drove to her mother's house, to get her. Mrs. Lynch brought with her a large pot of soup stock. Upon arrival at the Brouphy residence, Gerilyn entered through the front door where she was greeted by her 55 pound German Shepard/Huskie named Katie who followed her to the right and into the living room area.
Mrs. Lynch did not enter the house with Mrs. Brouphy. Instead, she removed the pot of soup stock from the car and followed her daughter into the house. As Mrs. Lynch proceeded down the hallway toward the kitchen, Katie went from the front room to the back door to be let out. Katie and Mrs. Lynch collided and Mrs. Lynch fell to the floor, as a result of which she sustained a fractured hip.
Mrs. Lynch and her husband, James Lynch, Jr., filed suit against Massachusetts Bay Insurance Company, the Brouphys' insurer. The Brouphys were subsequently added as defendants to the suit.
After a four day trial on the merits, the jury answered special interrogatories as follows:
1. Did Katie cause Mrs. Lynch's injuries?
 YES √ NO ____
 (If your answer is YES proceed to question number 2. If your answer is NO, stop
 here, sign this form and return to the courtroom)
2. Did Katie's conduct or defect create an unreasonable risk of harm to plaintiff, Mrs.
 Lynch?
 YES____ NO √ 
3. Were the defendants, Barry and Gerilyn Brouphy, negligent?
 YES____ NO √ 
 (If your answers to questions 2 and 3 are NO, stop, sign this form and return to the
 courtroom. If your answer to question 2 or 3 was YES, proceed to answer the
 following questions)
In conformity with the jury's findings, the trial court rendered judgment in favor of defendants, Barry Brouphy, Gerilyn Brouphy and Massachusetts Bay Insurance Company and against plaintiffs, Marjorie Lynch and James Lynch, Jr.
On appeal, the plaintiffs present the following assignments of error:
1. The jury's determination on strict liability is so contrary to the law and evidence as to constitute manifest error, warranting reversal.
2. The jury's determination on negligence is so contrary to the law and evidence as to constitute manifest error, warranting reversal.
*123 3. The trial court erred in failing to give plaintiff's requested jury instruction No. 5 setting forth the criteria for determining unreasonable risk of injury.
The plaintiffs request that this court reverse the findings of the jury and, as the record on appeal is complete, determine the amount of negligence, if any, attributable to Mrs. Lynch and the damages incurred by Mrs. Lynch and then render judgment accordingly.

ANALYSIS
Initially, we note that as a court of review, we are bound to abide by the clearly erroneous/manifest error standard as set forth by the Louisiana Supreme Court in Rosell v. ESCO., 549 So.2d 840 (La.1989) (and other cases) and more recently in Martin v. East Jefferson General Hosp., 582 So.2d 1272, 1277 (La.1991) when considering the factual findings made by the trial court:
... `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). We have instructed the appellate courts that when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.
[Emphasis added].

STRICT LIABILITY
LSA-C.C. art. 2321 provides in pertinent part that "The owner of an animal is answerable for the damage he has caused[.]"
In the recent case of Boyer v. Seal, 553 So.2d 827, 828 (La.1989), the Supreme Court held that in order to recover under C.C. art. 2321, the plaintiff must show "that the domestic animal causing her damage was owned by the defendant, that the animal created an unreasonable risk of harm, and that the damages occurred through this risk."
The Boyer court also stated that the test to determine whether the actions of a domestic animal created an unreasonable risk of harm was the same as that set forth in Entrevia v. Hood, 427 So.2d 1146 (La. 1983):
As this court has noted in relation to other forms of strict liability under the civil code, the activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations.
The judicial process involved in deciding whether a risk is unreasonable under Article 2317 is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, and in deciding the scope of duty or legal cause under the duty/risk analysis. [Citations omitted] Entrevia v. Hood, at p. 1149.
In Crawford, Torts, Development in the Law, 1989-1990, 51 La.L.Rev. 427, 430 (1990) the author stated that "The Supreme Court in Boyer v. Seal shed further welcome enlightenment on the criterion of unreasonableness" in the analysis of tort cases involving domestic animals. Professor Crawford then considered that it was highly unlikely that, in considering such animal cases, the trier of fact "would need the rather complex analysis of the risk-utility test" in determining whether the risk created by the animal was unreasonable. Instead "a jury should reason no further than to determine whether the conduct causing the harm is usually tolerated or rejected by society, a determination that jurors can make relying upon their ordinary experience in life." See also Smith v. American Indemnity Insurance Co., 598 So.2d 486 (La.App. 2 Cir.1992).
In the case before us, the testimony of Mrs. Lynch, and that of her husband and her daughter established beyond question that Mrs. Lynch was well acquainted with *124 Katie, that she saw the dog almost daily, and would go to the Brouphy's house to feed her when the Brouphys were out of town. Mrs. Lynch also testified that she loves Katie and considers the dog as a "second grandchild." Furthermore, Mrs. Lynch stated that she and her husband had two dogs of their own and that she was familiar with dogs and their behavior. Katie's conduct, in proceeding to the rear of the Brouphy residence while passing Mrs. Murphy, is certainly innocuous and as such, is tolerated by society in general, and, in the past, even by the plaintiffs themselves in particular.
In support of their contention that Katie's weight and activity level presented an unreasonable risk of harm, plaintiffs called a professional dog trainer and Katie's veterinarian, both of whom testified that they believed the dog did create such an unreasonable risk of harm. However, both admitted that, under the right circumstances, any dog could present an unreasonable risk of harm. Their testimony was contradicted by the expert witnesses called by defendants. Dr. Scott Griffith, a veterinarian, and Ms. Joan Buno, both examined Katie, found her well behaved, and concluded that she did not present an unreasonable risk of harm. It is apparent that the jury chose to believe defendants' experts, rather than plaintiffs' expertswhich is clearly their right and function.
We find the jury's choice perfectly reasonable and, accordingly, find no manifest error in the jury's findings that Katie did not present an unreasonable risk of harm.

NEGLIGENCE
In Fowler v. Roberts, 556 So.2d 1, 4-5 (La.1989), the Supreme Court set forth the necessary elements of determining liability in a negligence case:
The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element). The first element is usually a judge question, and the other four are usually jury questions unless reasonable minds could not differ.
Here, the jury considered the evidence of Katie's behavior and Mrs. Lynch's familiarity with Katie, and then concluded that Mrs. Brouphy's actions in keeping Katie in the house during the day and letting her out upon arrival at home did not fall below the appropriate standard of care. Therefore, they concluded, these actions did not breach any duty Mrs. Brouphy owed to Mrs. Lynch. There are certainly two permissible views of the evidence in this regard and the jury's conclusion is, again, a reasonable and acceptable one. Accordingly, we see no manifest error in this determination.

JURY INSTRUCTION
Plaintiffs also allege as error the trial court's failure to give their requested jury instruction on strict liability, which set forth the criteria for unreasonable risk of harm. Plaintiffs argue that, the jury may have misunderstood the instruction given by the trial court.
The record reflects that, contrary to the mandates of LSA-C.C.P. art. 1793,[1] the *125 plaintiffs failed to object to the trial court's failure to give the special jury instruction either before or immediately after the jury retired to deliberate. Accordingly, plaintiffs have waived their right to argue the issue on appeal. Le v. Johnstown Properties, 572 So.2d 1070 (La.App. 5 Cir.1990). However, in any event, we see no error in the instruction given by the learned trial judge.
Because we find no error in the jury's findings that defendants are not liable for plaintiffs' injuries, we need not address the issues of Mrs. Lynch's comparative negligence or of her damages.

DEFENDANT'S ARGUMENT
In brief, defendants argue that the trial court erred in assessing all costs, including expert fees, against them despite the fact that the verdict was entirely in their favor. However, defendants did not file a motion for appeal, nor did they file an answer to plaintiffs' appeal. Accordingly, we are precluded from addressing this issue. See Jones v. Gillen, 564 So.2d 1274 (La.App. 5 Cir.1990).
For the above discussed reasons, the judgment of the trial court in favor of defendants is affirmed. All costs of this appeal are assessed against plaintiffs-appellees.
AFFIRMED.

ON REHEARING
Appellee requests a rehearing for consideration of the correctness of the trial court's judgment insofar as it assesses costs against appellees despite the fact that they were the prevailing party.
The confusion regarding this matter arises from the fact that appellees filed their answer in the district court, and not in this court, and this pleading was not present in the record before us on the appeal of this case. Therefore, we stated in our original opinion that we were precluded from addressing this issue (because they had neither appealed nor filed an answer). Nevertheless, the Code of Civil Procedure does not require that the answer be filed in the Court of Appeal. C.C.P. art. 2133; Brouillette v. Consolidated Const. Co., 411 So.2d 598 (La.App. 1 Cir.1982).
L.S.A.-C.C.P. art. 1920 provides that:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
While it is the general rule that the party cast in judgment is taxed with all costs of a proceeding, the trial judge may assess the costs of a suit in any equitable manner and his assessment of costs can only be reversed by this Court upon a showing of abuse of discretion. Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La.App. 5 Cir.), writ denied 449 So.2d 1359 (La.1984).
Jurisprudence has established that when a prevailing party is taxed with the costs of litigation, it is usually because the party in some way incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against that litigant. Henderson v. Louisiana Downs, 566 So.2d 1059 (La.App. 2 Cir. 1990); Polk Chevrolet, Inc. v. Webb, 572 So.2d 1112 (La.App. 1 Cir.1990); Bowman v. New Orleans Public Service, 410 So.2d 270 (La.App. 4 Cir.1982). See also Muller Elec. v. E.I. Dupont De Nemours, 450 So.2d 746 (La.App. 5 Cir.1984).
In this case, the trial court, without reasons, assessed all costs, including the costs of both plaintiffs' and defendants' expert witnesses, against the successful defendants. However, we have reviewed the record before us and find no equitable basis which supports the trial court's assessment of costs. Accordingly, we find that *126 the judgment must be amended to assess all costs of this proceeding against plaintiffs.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] LSA-C.C.P. art. 1793 provides:

A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury.
[Emphasis ours].