[i CARAWAY, Judge,
dissenting.
While the majority has labeled the issue of strict liability in this case as fact sensitive, it is difficult to see from their opinion how any horseback riding accident would ever fall under Civil Code Article 2321’s imposition of strict liability. Since I believe that this plaintiff and the risk which she confronted on her horseback ride were well within the ambit of Article 2321’s protection, I respectfully dissent.
This case involves a horseback riding accident by a rider who had no experience in riding horses. The horse was slightly less than three-years old and had been green-broke for a short time. Because of its age and training, the horse was not a finished horse. The horse was gentle, but had only had one other rider, Mr. Jobe, who had only recently broken the horse within the few months leading up to the time of the accident.
The plaintiff in this case is in my opinion one of a class of persons who does not know enough about horses to comprehend the potential danger. She did not have the stirrups adjusted for her feet to be secure in the *505 did not appreciate the risk saddle. She enough to enter into a serious discussion with Mr. Jobe to advise him regarding her complete lack of adult horse riding experience. Instead, she asked him jokingly, “are you gonna put me on something that’s gonna kill me?” Based upon the testimony of the experienced riders who discussed at trial the many subtleties of the actions of horses, the plaintiff could not fully understand the danger of the situation.
Falling off a horse or being thrown to the ground which is the risk which the plaintiff encountered is extremely dangerous. The sudden power of the animal which caught this plaintiff completely off-guard is not unlike the sudden bite of a dog, and the damaging consequences to any adult victim can be much greater. The fact that a plaintiff chooses to come into close proximity with the animal, whether Rdog or horse, does not necessarily remove such risk from the unreasonable risk of harm category to which strict liability applies nor mean that the plaintiffs choice is a “substantial cause” of the accident so as to bar recovery or implicate comparative fault. Howard v. Allstate Insurance Co., 520 So.2d 715 (La.1988) and Kleinpeter v. State, Through Dept. of Corrections, 509 So.2d 56 (La.App. 1st Cir.1987).
The most telling testimony in this case occurred when Katherine Wood related to the court her horseback riding expertise and her experience with the gray mare which threw the plaintiff. Ms. Wood, who was an eighteen year old accomplished equestrian, acquired the horse approximately three months after the accident to train the animal. After classifying the gray mare as “green-broke,” she testified, as follows:
Q_ Would you ever put an inexperienced rider on a green-broke horse?
A. No.
Q. Why not?
A. Because it can be lethal.
(R. p. 271).
Citing the example of the cat in Boyer v. Seal, 553 So.2d 827 (La.1989) which innocuously brushed against the leg of the plaintiff, the majority mistakenly restates the mathe-matical-like expression of the supreme court for the risk-utility balancing test in the terms of a new math equation which doesn’t add up. Paraphrasing more precisely the Boyer language found at page 835, the correct equation should read:
Does the likelihood of injury resulting from such horse-like behavior (the sudden jolt) multiplied by the gravity of the harm threatened by it (broken bones, paralysis or death) outweigh the utility of allowing a horse to be available for riding by friends and guests who have no horseback riding experience?
IgWhile harm caused by a cat’s brush against a visitor’s leg would rarely be expected to result in any damage, a sudden throw from a horse can be expected to cause serious injury.
The next misconception with the analysis of both the trial court and the majority is their emphasis on the gentle nature of the horse. The same was said for the defendant’s gentle dog in Holland v. Buckley, 305 So.2d 113 (La.1974) where the court reversed the negligence-oriented theory erroneously applied to Article 2321 which had allowed dogs the first free bite. For the strict liability theory under Holland, the nature of the beast is not determined by measuring the animal’s demeanor, a very inexact science. The very fact of the unpredictability of a dog bite or a horse’s buck or jump stemming from a normally gentle species of animal is part of the equation for the legislative choice for the imposition of strict liability.
“Strict liability is based on a theory of responsibility which requires no finding of negligence. The ‘fault’ of the defendant does not involve blameworthiness or culpability.” Howard, supra, at p. 719 (emphasis added). “The animal owner’s liability arises solely from ownership and, where permissive custody is granted to another, is non-delegable. By entrusting his animal to another custodian, the owner does not escape responsibility because that custodian is a third person for whom the owner is answerable.” Dotson v. Matthews, 480 So.2d 860, 865 (La.App. 2d Cir.1985), writ denied 481 So.2d 1336 (La.1986), citing Rozell v. Louisiana Animal Breeders Co-op, Inc., 434 So.2d 404, 407-8 (La.1983), following remand 496 So.2d 275 *506 (La.1986). Based upon the above expression of the law regarding Article 2321 and my interpretation of the ruling of Boyer, supra., I dissent from the view of the majority and would reverse the judgment of the trial court.