671 So.2d 1216 (1996)
Ann H. BOWEN, Plaintiff-Appellant,
v.
Ben S. SKILLMAN, et al., Defendants-Appellees.
No. 28,217-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 1996.
Writ Denied June 7, 1996.
James W. Graves, Graves, Graves & Hanna, Shreveport, for Appellant.
Charles G. Tutt, Cook, Yancey, King & Galloway, Shreveport, for Defendant Ben S. Skillman.
James A. Mijalis, Lunn, Irion, Johnson, Salley & Carlisle, Shreveport, for Intervenor, Aetna Casualty & Surety Co.
Michael S. Hubley, Hicks & Hubley, Shreveport, for Defendant State Farm & Fire & Casualty Co.
Before MARVIN and BROWN, JJ., and CLARK J. Pro Tem.
CLARK, Judge Pro Tem.
In this tort action, plaintiff, Ann Bowen, seeks damages for an injury incurred when a thoroughbred race horse owned by the defendant, William Skillman,[1] reared up and struck her in the knee. The issue of liability was bifurcated from the issues of damages and insurance coverage. The trial court *1217 found that the actions of the horse did not create an unreasonable risk of harm and thus held that the defendant was not liable for damages sustained by the plaintiff. We affirm the trial court's ruling.

Facts
On August 24, 1989, Ms. Bowen was working as a veterinarian's assistant at Louisiana Downs. That morning she was assisting Dr. Ken Reed in "tubing" a race horse named Wafflier who was being boarded and trained at Louisiana Downs. Wafflier is a thoroughbred race horse who weighs approximately 1200 pounds and stands sixteen hands tall. It was stipulated at trial that Mr. Skillman is 75 per cent owner of Wafflier. Tubing is a procedure in which a plastic tube is inserted through the horse's nostril into its stomach. Medicine or electrolytes are pumped directly into the horse's stomach through this tube. The experts at trial testified that this is a common procedure performed on race horses.
Ms. Bowen was holding Wafflier with a twitch and by his halter while Dr. Reed actually inserted the tube into the horse's nostril. As Dr. Reed inserted the tube, Wafflier reared up and threw Ms. Bowen in the air. Wafflier pawed his front hoofs in the air and struck Ms. Bowen in the knee.
Ms. Bowen testified that she had assisted in this procedure hundreds of times on other horses and had assisted in tubing Wafflier on at least 20 to 30 prior occasions. Wafflier was the sixth or seventh horse that Dr. Reed and Ms. Bowen had tubed that morning. She never had any difficulties with Wafflier on the prior occasions and was not aware of anyone else having difficulties with this horse. Eileen Walker, Wafflier's trainer, stated they never had problems with Wafflier and he was not a mean horse. The trial court found that Wafflier had no history of violent behavior and had a reputation among the trainers and handlers as being a gentle, well-behaved horse.
The case was tried before a judge and the trial judge found that Wafflier did not pose an unreasonable risk of harm to the plaintiff.

Discussion
The plaintiff contends that the trial court erred in finding that Wafflier did not create an unreasonable risk of harm. We agree with the trial court.
LSA-C.C. Art. 2321 provides in pertinent part that "(t)he owner of an animal is answerable for the damage he has caused ..."
The Louisiana Supreme Court stated in Boyer v. Seal, 553 So.2d 827 (La.1989), that in order "to recover under Civil Code Article 2321, the plaintiff is required to prove that the domestic animal causing her injury was owned by the defendant, that the animal created an unreasonable risk of harm, and that the damage occurred through this risk." The court held that the unreasonable risk of harm principal was to be applied in animal cases "in the interest of continued manageable and harmonious application of strict liability under the Civil Code." Boyer v. Seal, supra, at 834. Unlike absolute liability, the standard of strict liability requires that the damage be caused by a vice or aspect of the thing which creates an unreasonable risk of harm to others. However, unlike the standard of negligence, a defendant may be liable for harm caused by the thing whether or not he was aware of the unreasonable risk of harm.
The criterion for determining whether a defendant has created or maintained a thing which is an unreasonable risk of harm is a balancing of claims and interest, a weighing of the risk and gravity of harm, and a consideration of individual and societal rights and obligations. Boyer v. Seal, supra; Smith v. Roan, 605 So.2d 10 (La.App. 2d Cir.1992). However, many of the animal liability cases do not set forth a complex analysis of this risk-utility test in determining whether a risk of harm is unreasonable. See Smith v. American Indemnity Insurance Co., 598 So.2d 486 (La.App. 2d Cir.), writ denied, 600 So.2d 685 (La.1992). Nor does the present case present a need for a complex analysis of the risk-utility test in determining whether Wafflier posed an unreasonable risk of harm.
The trial judge heard evidence that Wafflier was not a mean-spirited horse and was generally acknowledged to be gentle and well behaved. Ms. Bowen's testimony also *1218 supported this conclusion. She testified that she had assisted in tubing Wafflier on 20 to 30 prior occasions and never had any difficulties with him. Ms. Bowen was experienced with horses and was familiar with their behavior. She was a licensed veterinarian's assistant with five years experience dealing strictly with horses and had a degree in animal science.
The evidence indicated that although Wafflier's response to the tubing procedure was unusual, it was not unexpected. Both the experts and Dr. Reed agreed that when Wafflier reared up it was a defense mechanism. This incident appears to be an isolated, reflex reaction of the horse to the tube being inserted into his nostril.
In Smith v. Roan, supra, the plaintiff, a veterinarian's assistant, was injured in the course and scope of her duties while she was restraining a German Shepard whose nails were being clipped by the veterinarian. The dog broke free of the plaintiff's grasp and bit her on the lip. This court found that the defendant's dog did not create an unreasonable risk of harm. The plaintiff was an experienced dog handler who had worked with dogs for over eighteen years. The dog had never exhibited aggressive behavior and had never bitten anyone before this incident. Furthermore, this court found that "the possibility of being bitten under these circumstances was an occupational hazard in this type of business." Smith v. Roan, supra, at 12. Similarly, Ms. Bowen was experienced in dealing with race horses in general, and particularly with this horse. Wafflier was known to be gentle and well behaved. Being kicked by a horse is not an uncommon occurrence in the practice of equine veterinarian medicine.
It is well settled that an appellate court may not set aside a finding of fact by the trier of fact in absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Smith v. American Indemnity, supra. Considering all the circumstances, we cannot say that the trial judge was clearly wrong or manifestly erroneous in finding that Wafflier did not pose an unreasonable risk of harm to the plaintiff. Therefore, we affirm the trial court's judgment.

Conclusion
For the reasons stated above, we affirm the trial court's ruling rejecting the plaintiff's claim for damages against the defendant. All costs are assessed to the plaintiff.
AFFIRM.
NOTES
[1] The plaintiff in her original petition named "Ben S. Skillman" as defendant. However, the defendant's proper name is William B. Skillman. For the sake of consistency, we will maintain the case caption used in the trial court.