715 So.2d 131 (1998)
Leane DUBOIS, Plaintiff-Appellant,
v.
ECONOMY FIRE & CASUALTY COMPANY, et al., Defendants-Appellees.
No. 30721-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
Rehearing Denied August 13, 1998.
*132 Sockrider, Bolin & Anglin by James E. Bolin, Jr., Shreveport, for Plaintiff-Appellant.
Bodenheimer, Jones & Szwak, L.L.P. by James B. Bodenheimer, Shreveport, for Defendants-Appellees.
Before NORRIS, HIGHTOWER and PEATROSS, JJ.
PEATROSS, Judge.
In this personal injury action, Leane Dubois ("Plaintiff") is seeking damages for an injury sustained when Kodiak, a Siberian Husky owned by Kurvis Burns ("Burns"), bit her forearm. The trial court found that the risk created by boarding Kodiak at the veterinary clinic was not unreasonable and that Burns was not liable under either strict liability or negligence theories. The trial judge, therefore, granted judgment in favor of Burns and Economy Fire and Casualty Company, Burns' liability insurer under his homeowner's policy ("Defendants"). Plaintiff appeals the portion of the trial court's judgment pertaining to strict liability. For the following reasons, we affirm the judgment of the trial court.

FACTS
Plaintiff was employed by the Dog and Cat Clinic in Shreveport as a veterinary technician. Kodiak was brought into the clinic on March 20, 1995, to be boarded. On the morning of March 21, 1995, as part of her job duties, Plaintiff prepared to take Kodiak out to the "run" behind the clinic. The "run" is a large pen in which dogs are placed during the day for exercise. Plaintiff first moved Kodiak's food and water into the run, then went back for the dog. Plaintiff held Kodiak by his collar to lead him out as she had done many times in the past. The dog suddenly stopped and looked as though he wanted to bite Plaintiff. She tried talking to him to calm him down, but Kodiak bit her three times on her right forearm.
Plaintiff had been employed at the Dog and Cat Clinic since November 1993. Her duties included assisting in exams, surgery and care of the kennel. There were no written rules or guidelines for performing her job duties. She learned through on-the-job training. Plaintiff had been in contact with Kodiak on numerous occasions during the course of her employment at the clinic. She provided care for the dog when he boarded at the clinic, and she assisted Dr. Valerie Brown, the veterinarian, in giving him shots. Plaintiff described him as gentle and easy to handle. She had taken Kodiak out to the "run" approximately 20 to 50 times in the past.
The clinic began providing care and boarding services for Kodiak in 1985, when he was a puppy. He boarded there approximately once per month. Dr. Brown testified that Kodiak was not mean, that he was easy to take to the back yard and that it was probably not unusual for employees to grab him by the collar even though the clinic's policy was to use a lead when moving dogs around the clinic. Dr. Brown mentioned in her testimony that Kodiak was protective of his food, sometimes growling in a "(d)on't bother my food type of growl," and he would, at times, not want to come in when he was running around the back yard of the clinic. Burns testified, however, that Kodiak never demonstrated dangerous propensities.
After a bench trial, the trial judge rendered a written opinion in favor of Defendants. The trial judge found Smith v. Roan, 605 So.2d 10 (La.App. 2d Cir.1992), to be "substantially indistinguishable" from the case at hand and determined that Kodiak did not present an unreasonable risk of harm. The trial court stated, "The utility of an *133 animal, with a history of being gentle, being cared for when its owner is unable to do so outweighs the gravity of the harm threatened to an experienced technician or handler, such as the plaintiff herein."
Plaintiff appeals that portion of the judgment pertaining to strict liability. She asserts that the trial judge erred in his analysis of Holland v. Buckley, 305 So.2d 113 (La. 1974), by incorrectly reasoning that the jurisprudence following Holland forced a return to the old "first bite free" rule which was overruled by the Holland court.

DISCUSSION
At the time Plaintiff's cause of action arose, the relevant portion of La. C.C. art. 2321 stated, "The owner of an animal is answerable for the damage caused by the animal."[1]
In Holland, supra, the Supreme Court interpreted La. C.C. art. 2321 to mean that the master of a domesticated animal is presumed at fault when the animal harms another and that the nature of such fault is strict liability. Only by showing that the harm was caused by the fault of the victim, the fault of a third person for whom he was not responsible or by a fortuitous event, could the owner exculpate himself from fault.
The Supreme Court in Boyer v. Seal, 553 So.2d 827 (La.1989), further explained the elements for recovery under art. 2321 as requiring the plaintiff to prove that the defendant owned the animal causing harm, that the animal created an unreasonable risk of harm and that the damage occurred through this risk. Unlike absolute liability, the standard of strict liability requires that the damage be caused by a vice or aspect of the thing which creates an unreasonable risk of harm to others. Unlike the standard of negligence, however, a defendant may be liable for harm caused by a thing whether or not he was aware of the unreasonable risk of harm. Bowen v. Skillman, 28,217 (La.App.2d Cir. 4/3/96) 671 So.2d 1216.
The injured person does not have to establish the owner's negligence. The principle, however, that the person with ownership and enjoyment of the animal should bear the cost of damage caused through risks created by the animal is balanced by the policy that the owner should not be responsible for protecting against all risks. Animal cases, therefore, are not exempt from the unreasonable risk requirement applicable in other strict liability cases. Boyer, supra; Smith v. Roan, supra. Determining whether a defendant has maintained or created an unreasonable risk of harm requires a balancing of claims and interests, a weighing of the risk and gravity of the harm and a consideration of individual and societal rights and obligations. Boyer, supra; Bowen, supra; Smith v. Roan, supra.
The central issue in the present case is whether the behavior of Kodiak created or represented an unreasonable risk of harm to Plaintiff. Paraphrasing the risk-utility balancing test as stated in Boyer, we must determine whether the likelihood of injury resulting from such dog-like behavior (biting while being led by the collar by an experienced veterinary assistant) multiplied by the gravity of the harm threatened by the behavior (wound, infection and surgery) outweighs the utility of allowing dog owners to board their pets and have trained technicians care for the animal while the owner is out of town.
A similar situation was presented in Smith v. Roan, supra, in which a German Shepherd bit a veterinary assistant who was holding the dog while his nails were being clipped. The court found that the behavior of the dog did not present an unreasonable risk of harm. The veterinary assistant had worked with dogs over 18 years, and she had previously been bitten while grooming dogs. It appeared that she was not following the proper procedure for restraining dogs during grooming even though she had been instructed on the proper method. The dog had never bitten anyone and had been a patient there for eight years without exhibiting aggressive behavior. It was possible that the *134 dog reacted to the doctor striking a vein in its nail or to the presence of a stranger. In finding no unreasonable risk created by the dog's routine visit to the vet, the court stated, "The utility of the vaccination and other care received from the vet certainly outweighed the gravity of the harm threatened."
The proper standard of appellate review of the trial court's conclusions regarding unreasonable risk of harm is the manifest error standard as discussed in Stobart v. State, 617 So.2d 880 (La.1993). Reed v. Wal-Mart, 97-1174 (La.3/4/98), 708 So.2d 362. In light of the principles and jurisprudence set forth above, we cannot say the trial court erred in finding that Kodiak did not present an unreasonable risk of harm under the circumstances of this case.
Testimony indicated that Kodiak had been a patient of the Dog and Cat Clinic since 1985. He was either treated there or boarded there approximately once per month. He was not a mean dog and he demonstrated no dangerous propensities. Plaintiff had handled Kodiak throughout her employment with the clinic and had led him by the collar to the "run" at least 20 to 50 times before. She described him as gentle and easy to handle. She was not scared of him, and she never noticed any signs of aggression. She also indicated that she would have "very carefully" taken care of Kodiak subsequent to the incident, even leading him by the collar. While commenting that "(t)here is always a risk," she indicated that she would not have considered this to be an unreasonable risk.
Just as the court in Smith v. Roan, supra, determined that the utility of care and vaccinations received from a vet outweighed the gravity of the harm threatened, the trial court found, and we agree, that the utility of boarding services provided by a veterinarian to care for animals while the owner is away outweighs the risk and gravity of harm threatened by the dog in this case.
Contrary to Plaintiff's argument that a finding of no unreasonable risk of harm arises from an incorrect interpretation of Holland, our decision does not rest on the "first bite free" rule. It rests upon the record which establishes no basis for finding that the dog presented an unreasonable risk of harm to Plaintiff as she led him out by his collar as she had done numerous times in the past. During oral arguments, Plaintiff's counsel argued that an unprovoked dog bite automatically establishes the owner's liability. To follow this argument, however, would remove dog bite cases from the realm of strict liability and into absolute liability. The unreasonable risk of harm analysis required by Boyer, however, prevents such a result.

CONCLUSION
For the reasons set forth above, we affirm the judgment of the trial court in favor of Defendants. Costs of this appeal are assessed against Plaintiff.
AFFIRMED.
NORRIS, J., dissents with written reasons.
NORRIS, Judge, dissenting.
I respectfully dissent. The core principal is La. C.C. art. 2321, which provided, prior to the 1996 amendment, "The owner of an animal is answerable for the damage caused by the animal." In Holland v. Buckley, 305 So.2d 113 (La.1974), a dog bite case, the Supreme Court held that when a domesticated animal harms another, the master is presumed to be at fault; this fault is in the nature of strict liability. Holland effectively overruled prior jurisprudence by adopting a presumption of fault. See Rozell v. Louisiana Animal Breeders Co-op. Inc., 434 So.2d 404 (La.1983); W. Crawford, "Presumed Fault for Injuries by Animals and Children," 36 La. L.Rev. 400 (1976). Rozell further holds that the master does not escape liability by entrusting the animal to a custodian.
The Supreme Court reaffirmed the application of strict liability in Boyer v. Seal, 553 So.2d 827 (La.1989), a case in which the plaintiff claimed damages for a cat that brushed against her legs and caused her to fall. Finding that the cat's conduct which caused the incident did not pose an unreasonable risk of harm, the Court stated that the owner of an animal which creates such a risk is liable for the harm done by that animal because of its deficient conduct, even though *135 the owner himself is not personally negligent. The court concluded:
We do not believe that a legislator or other objective policymaker regulating this case, after weighing all social, economic, moral and other considerations, would decide that the behavior of the cat in either rubbing the legs of a visitor in its home or accidentally getting in the way or underfoot is an unreasonable risk of harm. Magique's behavior was innocuous, especially when compared with other cat-created risks widely tolerated by our society. (Emphasis added.)
The court specifically noted that when a dog bites a human, that very act poses an unreasonable risk of harm. Howard v. Allstate Ins. Co., 520 So.2d 715 (La.1988). This jurisprudence firmly establishes that the linchpin is the animal's conduct, not the nature of the animal itself, which must be considered in a case under the former art. 2321. The likelihood of injury from a dog bite that is unprovoked, multiplied by the gravity of the harm threatened by it, outweighs the utility of keeping a dog as a pet where it may be exposed to guests, relatives and third party custodians.
I believe the majority has strayed from this jurisprudence by relying on evidence that Kodiak had been a patient of the Dog and Cat Clinic since 1985; he boarded or treated there once a month; he was not a mean dog and demonstrated no dangerous propensities. These facts establish knowledge on the part of the dog's owner, and overlook the fact that the conduct of a dog that bites is unreasonably dangerous. The owner's lack of knowledge does not defeat this. Holland v. Buckley, supra. I also believe that the evidence of the plaintiff's frequent contact with Kodiak, the fact that she was charged with properly caring for him, and her willingness to assume some risks, establish comparative fault, but do not defeat the rule that a dog bite is unreasonably dangerous conduct.
Finally, I do not find that this court's opinion in Smith v. Roan, 605 So.2d 10 (La. App. 2 Cir.1992), mandates the majority's decision in the instant case. Mr. Roan's German Shepherd bit the plaintiff, a veterinarian's assistant, but there was evidence that the animal was mishandled in the nail-clipping process. Victim fault or third-person fault may defeat a strict liability claim. Holland v. Buckley, supra.
I would reverse the judgment of the District Court, award the plaintiff's special damages, general damages of $25,000, and assess 20% fault to the plaintiff.
I respectfully dissent.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and NORRIS, HIGHTOWER, BROWN and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] Act 1 of 1996 amended art. 2321, effective April 16, 1996. As this is a change in substantive law, it applies prospectively only, in the absence of contrary legislative expression. La. C.C. art. 6. Dubois' cause of action, which arose in 1995, is governed by the law in effect at that time.