LISA JOHNSON
v.
FREDERICK E. HACKLEY, SHELIA HACKLEY AND UNITED SERVICES AUTOMOBILE ASSOCIATION
No. 2008 CA 2115.
Court of Appeals of Louisiana, First Circuit.
June 12, 2009.
Not Designated for Publication
Lon E. Robertson, Jerrard M. Young, Attorneys for Plaintiff/Appellant, Lisa Johnson.
Brent Kinchen, Willie G Johnson Jr., Attorneys for Defendants/Appellees, Frederick E. Hackley, Shelia Hackley and United Services Automobile Association.
Before: CARTER, C.J., WHIPPLE and DOWNING, JJ.
CARTER, C. J.
In this dog-bite case, plaintiff, Lisa Johnson, appeals a judgment of the trial court granting summary judgment and dismissing all of her claims against the dog's owners and their insurer.
On November 26, 2005, Johnson was working as a dog groomer at Petz Plaza of Baton Rouge. Johnson groomed a thirty to forty pound, mixed-breed terrier named Harry, owned by Frederick and Sheila Hackley. Johnson groomed Harry's coat, which included shaving matted hair, then played fetch with the dog without incident. Thereafter, Johnson placed Harry in a bathing tub. Johnson placed a restraining grooming "loop" around Harry's neck, but did not muzzle him. Johnson held the water hose that was connected to the tub in her hand and turned the nozzle to turn on the water. As the water came out of the hose, Harry attacked the hose and bit Johnson's left index finger, severing the finger above the first knuckle. Surgeons were unable to reattach the fingertip.
Johnson instituted the instant suit for damages against Frederick and Sheila Hackley and their insurer (collectively, "the Hackleys"). The Hackleys filed a motion for summary judgment contending that they could not have prevented Johnson's injuries, that their dog did not present an unreasonable risk of harm, and Johnson's injuries resulted from her provocation of the dog, and, therefore, that they could not be held liable for Johnson's injuries under theories of either strict liability or negligence. The trial court granted the motion and dismissed Johnson's claims against the Hackleys. Johnson now appeals.
A dog owner can be held liable under theories of either negligence or strict liability. LSA-C.C. art. 2321. To establish a claim for strict liability, a plaintiff must prove: 1) that his person or property was damaged by the owner's dog; 2) that the injuries could have been prevented by the owner; and 3) that the injuries did not result from the injured person's provocation of the dog. Pepper v. Triplet, 03-0619 (La. 1/21/04), 864 So.2d 181, 200. To establish that the owner could have prevented the injury, the plaintiff must show that the dog presented an unreasonable risk of harm. Id. Determining whether a dog presents an unreasonable risk of harm involves a balancing of claims and interests, a weighing of the risk and gravity of harm, and a consideration of individual and societal rights and obligations. Pepper, 864 So.2d at 195-196. In determining whether there is strict liability, a court need not consider whether the dog owner knew or should have known that the dog's behavior would cause damage or whether the dog owner failed to exercise reasonable care as would have prevented the damage. McCoy v. Lucius, 36,894 (La. App. 2 Cir. 3/5/03), 839 So.2d 1050, 1054, writ denied, 03-1217 (La. 3/26/04), 871 So.2d 344.
This is not a case of a dog biting someone in a public situation. Rather, Harry bit his groomer, Johnson. Johnson was the only witness to the incident and stated that the dog attacked the hose, not her, but her finger was bitten during the attack on the hose. After reviewing the record before us de novo, and balancing the claims and interests at issue, we conclude that the dog did not present an unreasonable risk of harm. In Dubois v. Economy Fire & Casualty Co., 30,721 (La. App. 2 Cir. 6/24/98), 715 So.2d 131, 134, the court similarly found that a dog that bit a veterinarian's assistant was not an unreasonable risk of harm, stating, "the utility of boarding services provided by a veterinarian to care for animals while the owner is away outweighs the risk and gravity of harm threatened by the dog." We find here that the utility of grooming services provided by trained professionals outweighs the risk and gravity of harm threatened by this dog.
Having performed de novo review to reach this conclusion, we need not address Johnson's arguments that the trial court applied an incorrect legal standard or improperly weighed evidence to reach its conclusion. Moreover, we disagree that Johnson met her burden on the motion for summary judgment of presenting evidence sufficient to establish that she would be able to meet her evidentiary burden at trial, with regard to either the claim based on strict liability or negligence.
Considering the foregoing, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Lisa Johnson. This memorandum opinion is issued in compliance with URCA Rule 2-16.1.B.
AFFIRMED.
DOWNING, J., concurs and assigns reasons.
I agree with the result reached by the majority. I disagree, however, with the improper analysis of La. C.C. Art. 2321 as set forth in Pepper v. Triplet, 03-0619 (La. 1/21/04) 864 So.2d 181. In Pepper, the Supreme Court first clearly and correctly cites law as regards statutory interpretation:
Under the general rules of statutory construction, courts begin with the premise that legislation is the solemn expression of legislative will and, therefore, the interpretation of a law involves, primarily, the search for the legislature's intent. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of intent of the legislature. Further, it is a well-recognized and long-established rule of statutory construction that statutory provisions should be construed along with the remainder of the statute, and all statutes on the same subject matter should be read together and interpreted as a whole to effect the legislative intent and should be construed in such a way as to reconcile, if possible, apparent inconsistencies or ambiguities so that each part is given effect. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. It is presumed that the intention of the legislative branch is to achieve a consistent body of law. The starting point for the interpretation of any statute, then, is the language of the statute itself. (Citations omitted.) Id., 03-0619, 864 So.2d at 193.
More directly, civilian methodology and the Civil Code each emphasize that there exists two sources of law, legislation and custom, and that legislation, being defined as the solemn expression of legislative will, is the superior source of law. Willis-Knighton Medical Center v. Caddo-Shreveport Sales and Use Tax Commission, 04-0473 (La. 4/1/05) 903 So.2d 1071, 1085. Therefore, only when a law is unclear or ambiguous or its application leads to absurd consequences should a court look past the text itself in order to interpret legislative intent.
La. C.C. Art 2321 clearly and simply provides, in pertinent part, that "the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog." (Emphasis added.) After citing this clear and unambiguous text of La. C.C. Art. 2321, however, the Supreme Court then added on an additional element not included in the text, a common law utilitarian analysis to determine whether a given dog is an unreasonable risk of harm. Pepper, 03-0619, 864 So.2d at 194.
The Supreme Court, by unnecessarily expanding the strict liability test as set forth by the legislature in Art. 2321, made a dangerous leap from civil law statutory analysis to common law judicial interpretation. Such an aberration from traditional civilian statutory interpretation not only obfuscates but unnecessarily aggrandizes the true legislative will as clearly set forth in the language of the code article.
"The least desirable thing in the world is what is called a mobile and uncertain law and elastic and flexible jurisprudence. What is needed is a fixed and uniform law, the same at all times and in all places, and a jurisprudence founded on and restrained by its positive provisions. As to the adaptation of the law to changed conditions and new needs growing out of social evolution, a sufficient safeguard is found in the legislative faculty of amending the law. And as to new cases which in the infinite variety of human relations may arise before judges, not covered by the provisions of positive law, we know of no nobler or better rule than that provided by Article 21[1] of our Code, declaring that `Where there is no express law, the judge is bound to proceed and decide according to equity,' .... We doubt if the most enlightened judge, however unfettered by positive law, can devise a better rule." Louisiana Supreme Court Justice Chas. E. Fenner, The Civil Code of Louisiana as a Democratic Institution, Louisiana Bar Association Proceedings, 7-25 (1904).
I maintain, therefore, as did the Louisiana Supreme Court in Wartelle v. Women's and Children's Hospital, Inc., 97-C-0744 (La. 12/2/97), 704 So.2d 778, 784, that "in keeping with our civilian tradition," it is the charge of the judiciary to "interpret the law; the legislative function is entrusted to the legislature and the people exclusively."
CONCURS.
NOTES
[1] This former article has been adapted into the modern Louisiana Civil Code Article 4, which reads: "When no rule for a particular situation can be derived from legislation or custom, the court is bound to proceed according to equity. To decide equitably, resort is made to justice, reason, and prevailing usages."